# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 03-600

RONNIE E. THORNHILL, APPELLANT,

V.

ANTHONY J. PRINCIPI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided      March 15, 2004   )

*Sean A. Ravin*, of Washington, D.C., was on the pleading for the appellant.

*Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Thomas A. McLaughlin*, Special Assistant to the Assistant General Counsel; and *Gabrielle L. Clemons* (nonattorney practitioner), all of Washington, D.C., were on the pleading for the appellee.

Before KRAMER, *Chief Judge*, and IVERS and STEINBERG, *Judges.*

KRAMER, *Chief Judge*:  The issue before the Court is whether the appellant filed a timely Notice of Appeal (NOA) from a November 2002 Board of Veterans' Appeals (Board or BVA) decision.  For the reasons that follow, the Court will dismiss for lack of jurisdiction this appeal.

## I.  Background

In a November 21, 2002, decision, the Board, inter alia, denied the appellant's claim for service connection for post-traumatic stress disorder (PTSD).  April 1, 2003, Transmittal of Copy of Board decision (April 2003 Trans.) at 2, 9.  The Board also indicated that "[t]he issue of entitlement to service connection for a cervical[-]spine disorder will be the subject of a separate decision" and informed the appellant:

> The Board is undertaking additional development with respect
> to [your] claim of entitlement to service connection for a

cervical[-]spine disorder, pursuant to authority granted by 38 C.F.R. § 19.9(a)(2) (2002). When the development is completed, the Board will provide notice of the development as required by the Rule of Practice 903. 38 C.F.R. § 20.903 (2002). After giving notice and reviewing [your] and/or [your] representative's response, the Board will prepare a separate decision addressing this issue.

April 2003 Trans. at 1, 2. An Appeals Notice is attached to the copy of the November 2002 decision that the Secretary transmitted to the Court. *See* April 2003 Trans.; *see also* April 2003 Trans. at 9 ("**IMPORTANT NOTICE:** We have attached a VA Form 4597[, i.e., Appeals Notice,] that tells you what steps you can take if you disagree with our decision.").

Subsequent to its November 2002 decision, the Board, on February 12, 2003, sent to the appellant a letter in which it informed him that the BVA was "writing to let [him] know that the Board . . . w[ould] be developing additional evidence concerning [his] appeal." Opposition, Attachment (Attach.) 2 at 1. In that letter, the Board requested that he do the following:

> Please complete and sign a VA Form(s) 21-4142, *Authorization and Consent to Release Information to the Department of Veterans Affairs (VA)*, for each **non-VA** doctor[] and medical care facility that treated [him] for a neck/cervical[-]spine disorder since [his] discharge from service. . . .
>
> If treatment was received from a **VA medical facility**, use the enclosed VA [F]orm 21-4138, *Statement in Support of Claim*, to provide the name of that facility and the approximate dates of treatment.

Opposition, Attach. 2 at 1 (underline emphasis added). The BVA closed the letter by informing the appellant that, "[i]f [he had] any questions concerning this letter," he could call the telephone number provided in the letter. Opposition, Attach. 2 at 2.

On March 25, 2003, the appellant filed pro se an NOA from the November 21, 2002, Board decision. (The Court notes that the appellant's NOA was filed on March 25, 2003, the postmark date that appears on the envelope in which that NOA was mailed. *See* 38 U.S.C. § 7266(c)(2) (NOA that is properly addressed to Court and mailed is deemed received on date of U.S. Postal Service postmark stamped on cover containing NOA).) The appellant's NOA, therefore, was filed with the Court 124 days after notice of the November 2002 Board decision was mailed. Subsequent to filing his NOA, the appellant retained counsel to represent him in the instant appeal.

2

The Secretary, on May 30, 2003, filed a motion to dismiss. In that motion, the Secretary asserts that the appellant failed to file a timely NOA; he argues that, therefore, the Court lacks jurisdiction over the instant case and should dismiss the appellant's appeal. The Secretary, on that same date, also filed an unopposed motion to stay proceedings, which the Court granted on June 4, 2003.

On July 1, 2003, the appellant, through counsel, filed an opposition to the Secretary's motion to dismiss. In that opposition, the appellant initially notes, inter alia, that his NOA "arrived at the . . . Court . . . in an official VA Vet Center envelope"; that "[t]he original of this envelope remains in the Court's file, and the envelope has a postmark of March 25, 2003"; and that "[n]either the Vet Center envelope nor the [NOA] have any date markings from . . . VA." Opposition at 2. The appellant first argues that the 120-day NOA-filing period "should be tolled [because of] the Secretary's 'unclean hands' in delaying the filing [with the Court] of his [NOA]." Opposition at 2. To support this argument, he asserts that VA "significantly contributed to his failure to timely file his NOA" because "[he] has been receiving psychiatric care from . . . VA, including inpatient treatment for lengthy periods[, and h]e requested assistance from . . . VA in filing his [NOA] with the Court, however, rather than timely filing his NOA, . . . VA filed his NOA untimely." *Id*. at 3. The appellant alternatively argues that the 120-day NOA-filing period should be tolled because of the confusing nature of the Board's February 2003 letter to him. Opposition at 3. In support of this argument, the appellant asserts that the February 2003 letter "[was] so vague that it misled him into believing that his [PTSD claim] had not been decided by the Board or that the Board had reconsidered and would develop evidence [relating to his PTSD claim]." *Id*. at 3. He further asserts:

> There is absolutely no indication in the letter that the Board's evidentiary development pertains only to the cervical[-]spine disorder on appeal. The letter does ask for information regarding [the] appellant's treatment for a cervical[-]spine disorder, but this does not foreclose the possibility that the Board also sought to develop [the] appellant's PTSD claim on appeal. The letter is confusing[,] and a reasonable person could easily interpret it as a notice by the Board that it intended to develop additional evidence for the issues on appeal.

*Id*.

**II. Analysis**

The ultimate burden of establishing jurisdiction by a preponderance of the evidence rests with the appellant. *See McNutt v. G.M.A.C.*, 298 U.S. 178, 189 (1936); *Bethea v. Derwinski*, 2 Vet.App. 252, 255 (1992). Pursuant to 38 U.S.C. § 7266(a), in order for a claimant to obtain review of a BVA decision by this Court, that decision must be final and the person adversely affected by that decision must file a timely NOA with the Court. *See Bailey (Harold) v. West*, 160 F.3d 1360, 1363 (Fed. Cir. 1998) (en banc). To have been timely filed under 38 U.S.C. § 7266(a) and Rule 4 of this Court's Rules of Practice and Procedure, an NOA generally must have been received by the Court (or, in certain circumstances, be deemed received) within 120 days after notice of the underlying final BVA decision was mailed. *See Cintron v. West*, 13 Vet.App. 251, 254 (1999).

Under certain circumstances, however, equitable tolling of the judicial-appeal period may be appropriate. *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990); *Bailey (Harold)*, 160 F.3d at 1364-68 (discussing equitable tolling in veterans benefits context); *Evans v. West*, 12 Vet.App. 396, 399 (1999). According to the *Irwin* court, equitable tolling has been allowed in the two situations discussed below. Courts, however, "have generally been much less forgiving in receiving late filings where the [appellant] failed to exercise due diligence in preserving his legal rights." *Irwin*, 498 U.S. at 96.

First, equitable tolling may apply where an appellant "has actively pursued his judicial remedies by filing a defective pleading during the statutory period." *Irwin*, 498 U.S. at 96. The United States Court of Appeals for the Federal Circuit (Federal Circuit) applied this *Irwin* prong in, inter alia, *Santana-Venegas v. Principi* and concluded that, where an appellant, during the 120-day judicial-appeal period, misfiles his NOA with the same VA regional office (RO) from which his claim originated, he "'satisfies the [due] diligence requirement [so as to preserve his legal rights].'" *Santana-Venegas*, 314 F.3d 1293, 1298 (Fed. Cir. 2002) (quoting *Jaquay v. Principi*, 304 F.3d 1276, 1288 (Fed. Cir. 2002) (en banc)). The Federal Circuit then held that such a misfiling of an NOA "at the same [RO] from which the claim originated" triggers equitable tolling of the 120-day NOA-filing period. *Santana-Venegas*, 314 F.3d at 1298; *see Jaquay*, 304 F.3d at 1280 (explaining that, in majority of situations, when veteran seeks to file claim for benefits or for reopening, he or she does so at RO and RO adjudicates claim). In so holding, the Federal Circuit referenced that the RO had

not notified Santana-Venegas, until 70 days (which was after the 120-day appeal period had expired) after having received his NOA, that he should have filed that NOA with this Court. *See Santana-Venegas*, 314 F.3d at 1295-98 (also noting that appellant had acted upon that advice almost immediately by refiling his NOA with this Court and that there were VA policies on timely assistance and timely response (within 10 days of receipt) to all correspondence received by VA). The Federal Circuit again applied this *Irwin* prong in *Bailey (Edward) v. Principi* and concluded that, where an appellant, during the 120-day judicial-appeal period, "attempts to file a[n NOA] by completing a document that is clearly intended to serve as a[n NOA] and . . . ha[ving] that document delivered to *the* [*RO*] *from which* [*his*] *claim originated* . . . [, he] is entitled to invoke the doctrine of equitable tolling." *Bailey (Edward)*, 351 F.3d 1381, 1385 (Fed. Cir. 2003) (emphasis added). Similar to *Santana-Venegas*, *supra*, the Federal Circuit referenced that, although Bailey, within the 120-day appeal period (specifically, on the 107th day), had misfiled his NOA with the RO from which his claim originated, the RO had taken "no action with respect to that document until [nine months after receiving the document,]" and then only upon inquiry from Bailey's representative. *Id*. at 1383.

Further, equitable tolling may be available where an appellant "has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin*, 498 U.S. at 96. In applying this second *Irwin* prong, the Federal Circuit held in *Bailey (Harold)* that, "[g]iven the particular relationship between veterans and the government," equitable tolling could apply where, "[a]lthough there is no suggestion of misconduct," VA's conduct misled a claimant "into allowing the filing deadline to pass." *Bailey (Harold)*, 160 F.3d at 1365; *see Cintron,* 13 Vet.App. at 257 ("cause and effect" relationship must exist, i.e, appellant relied to his own detriment on action that VA took, or should have taken but did not, and equitable tolling is not invoked if "the appellant's reliance on VA was not the cause of the late filing").

The copy of the Board decision filed by the Secretary reflects that the appellant was fully advised of his appellate rights in accordance with 38 U.S.C. § 5104. *See Cummings v. West*, 136 F.3d 1468, 1470-74 (Fed. Cir. 1998). The appellant's NOA, however, was filed with the Court 124 days after the Board mailed to him notice of its November 2002 decision. Moreover, the appellant has not demonstrated that there is anything in this appeal to suggest that tolling of the

judicial-appeal period would be appropriate under the tolling law applicable to this Court. *See Irwin*, *Santana-Venegas*, and *Bailey (Harold)*, all *supra*. Specifically, the appellant's arguments for tolling are unavailing. In this regard, although the appellant mentions that he has been undergoing psychiatric treatment with VA, he has not presented any discernible argument for tolling based on any such care. *See Dudley v. Derwinski*, 2 Vet.App. 602, 603 (1992) (en banc) (Court has not adopted ill health as basis for equitable tolling). With respect to the appellant's unclean-hands argument, it is not entirely clear what he is contending. To the extent that he may be seeking equitable tolling pursuant to *Santana-Venegas*, *supra*, based on purported delivery of his NOA to the Vet Center and the Vet Center's purported untimely submission of the NOA to this Court, he has not presented any support for any such tolling. *See* Opposition at 2-3. Specifically, he has not presented to the Court up to this point (1) any argument and authority that the Vet Center is, in the words of the Federal Circuit, the same RO from which his claim originated, i.e., that the Vet Center has served a purpose equivalent to the RO in the VA adjudication of his PTSD claim, and (2) any evidence as to if and when he submitted his NOA to the Vet Center and under what circumstances; indeed, he appears to concede that no such evidence exists. *See* Opposition at 2. The appellant has not demonstrated by a preponderance of the evidence, therefore, that this is a situation where he "fil[ed] a defective pleading during the statutory period" (*Irwin*, 498 U.S. at 96), i.e., misfiled his NOA with the same RO from which his claim originated, and equitable tolling of the judicial-appeal period has not been triggered (*cf. Santana-Venegas*, *supra*). To the extent that the appellant may be seeking equitable tolling under *Bailey (Harold)*, *supra*, despite his assertions that he sought VA's assistance in completing and filing his NOA, he has not shown that any VA employee accepted the appellant's NOA or indicated that he or she "would take care of [the appellant's appeal]." *Bailey (Harold)*, 160 F.3d at 1361. The appellant, therefore, has not shown by a preponderance of the evidence that this is a situation where he was misled into allowing the NOA-filing period to expire; thus, equitable tolling has not been triggered. *Cf. Bailey (Harold)*, *supra*.

As to the appellant's confusing-letter argument, that contention is unpersuasive for several reasons. First, in its November 2002 decision, the Board clearly indicated at least twice that the appellant's PTSD-service-connection claim was denied, and nothing in the BVA's February 2003 letter even implicitly indicated otherwise. *See* April 2003 Trans. at 2, 9; Opposition, Attach. 2 at 1.

Further, the Appeals Notice attached to, and specifically referred to in, the November 2002 Board decision clearly indicated that an NOA must be filed with the Court within 120 days after notice of the Board decision (here denial of the PTSD-service-connection claim) is mailed, and nothing in the February 2003 letter indicated to the contrary. *See* April 2003 Trans., Appeals Notice; Opposition, Attach. 2 at 1-2; *see also Cummings*, 136 F.3d at 1472-74 (holding that language utilized in Appeals Notice accompanying Board decision satisfactorily explained how and when to pursue BVA reconsideration and to appeal to this Court); *cf. Jaquay*, 304 F.3d at 1284 (stating holding from *Cummings*, *supra*, that 38 U.S.C. § 5104 requires nothing more than general outline of available procedures for obtaining review of final Board decision). Moreover, the Board, in the November 2002 decision, clearly stated that it would be developing the appellant's cervical-spine-disorder-service-connection claim and made no mention of any development of the denied PTSD-service-connection claim. *See* April 2003 Trans. at 2. Then, in its February 2003 letter, the Board specifically requested information relating to the appellant's claim for service connection for a cervical-spine disorder and made no mention of the appellant's claim for service connection for PTSD. *See* Opposition, Attach. 2 at 1. Although the Court is sympathetic to the appellant's contention that he was confused, the Board, in the February 2003 letter, included a telephone number that he could call if he had any questions regarding that letter. *See* Opposition, Attach. 2 at 2. The appellant has not averred or demonstrated that he utilized that telephone number and that he was given any misleading information or advice. *See* Opposition at 1-4. For all of these reasons, the Court concludes that the appellant has not demonstrated by a preponderance of the evidence that the Board's February 2003 letter caused him to allow the 120-day NOA-filing period to expire. *See Bailey (Harold)*, *supra*; *Cintron*, 13 Vet.App. at 257 (as to "cause and effect" relationship).

Hence, the appellant has not demonstrated by a preponderance of the evidence that tolling of the judicial-appeal period would be appropriate. *See Irwin*, *Santana-Venegas*, and *Bailey (Harold)*, all *supra*. The Court thus concludes that the appellant has not met the burden of demonstrating by a preponderance of the evidence that an NOA was timely filed. *See* 38 U.S.C. § 7266(a). The Court, therefore, lacks jurisdiction over the instant appeal based on the evidence and argument presented here.

### III. Conclusion

The stay of proceedings is dissolved. Upon consideration of the foregoing analysis and the parties' pleadings, the Secretary's motion is granted, and this appeal is DISMISSED for lack of jurisdiction.