# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 16-1948

CHARLES H. JAMES, APPELLANT,

V.

DAVID J. SHULKIN, M.D.,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

Before SCHOELEN, PIETSCH, and GREENBERG, *Judges.*

## O R D E R

## I. BACKGROUND

On January 28, 2016, the Board of Veterans' Appeals (Board) denied the disability compensation claims of the appellant, Charles H. James, for a lumbar spine disability and a cervical spine disability, as well as an increased rating claim for pseudofolliculitis barbae. The deadline to file his Notice of Appeal (NOA) from that Board decision was Friday, May 27, 2016. Mr. James asserts that he placed his NOA in his personal mailbox the day the NOA was due, raised the mailbox flag, then proceeded to leave town for the weekend. When he returned to his place of residence, Mr. James ascertained that a postal worker had not collected the NOA and that the mailbox flag had been lowered. When Mr. James discovered the uncollected NOA, he mailed it at his local post office.

On May 31, 2016, the Court filed Mr. James's NOA – more than 120 days after a final Board decision. Accordingly, on July 7, 2016, the Court ordered Mr. James to show cause why his NOA should not be dismissed for an untimely filing.

## II. ANALYSIS

Generally, an appellant may obtain Court review of an adverse Board decision only if the appellant submits an NOA to the Court within 120 days after the Board mails notice of its decision. 38 U.S.C. § 7266(a). Because the appellant filed his NOA outside the 120-day filing period, the appellant may maintain his appeal only through the doctrine of equitable tolling. To receive equitable tolling, the appellant must demonstrate three elements: (1) Extraordinary circumstance; (2) due diligence; and (3) causation. *Checo v. Shinseki*, 748 F.3d 1373, 1378 (Fed. Cir. 2014). Whether equitable tolling is warranted in a particular case must be assessed on a case-by-case basis. *See Sneed v. Shinseki*, 737 F.3d 719, 726 (Fed. Cir. 2013) (noting that equitable tolling is not "'limited to a small and closed set of factual patterns'" (quoting *Mapu v. Nicholson*, 297 F.3d 1375, 1380 (Fed. Cir. 2005))).

In order to receive equitable tolling based on extraordinary circumstances, the extraordinary circumstance must be beyond the appellant's control. *McCreary v. Nicholson*,

19 Vet.App. 324, 330-32 (2005). Examples of such extraordinary circumstances include (1) mental illness rendering one incapable of handling one's own affairs or other extraordinary circumstances beyond one's control; (2) reliance on an incorrect statement of a VA official; and (3) misfiling at the regional office (RO) or the Board. *See, e.g.*, *Brandenburg v. Principi*, 371 F.3d 1362, 1364 (Fed. Cir. 2004) (NOA submitted to Board); *Barrett v. Principi*, 363 F.3d 1316, 1321 (Fed. Cir. 2004) (mental illness rendering one incapable of handling his own affairs); *Santana-Venegas v. Principi*, 314 F.3d 1293, 1298 (Fed. Cir. 2002) (NOA submitted to the original RO).

Here, Mr. James contends that the 120-day appeal window should be equitably tolled because an errantly lowered flag on his residential mailbox constitutes an extraordinary circumstance beyond his control. Appellant's Response at 4. He argues that "[t]his extraordinary circumstance is akin to other cases in which veterans have filed their NOA on time, but in the wrong place," citing *Santana-Venegas*, 314 F.3d at 1293, where the veteran timely filed his NOA, but mailed it to the RO instead of the Court. *Id.* He further argues that the diligence requirement here should be the same type of diligence required in misfiling cases. *Id.* at 6-7 (citing *Santana-Venegas*, 314 F.3d at 1297 ("'[T]he diligence requirement is more relaxed for cases where the claimant filed a pleading in the wrong place as opposed to filing it after a statutory deadline.'" (citations omitted))).

The logic of the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) in *Santana-Venegas* does not apply in this case. The Federal Circuit explicitly noted that "'[m]isfiling cases within the veterans' system are unlike the typical late-filing cases where the limitations period expires before the would-be claimants perform any action to preserve their legal rights.'" *Santana-Venegas*, 314 F.3d at 1297 (quoting *Jaquay v. Principi*, 304 F.3d 1276, 1287-88 (Fed. Cir. 2002) (citations omitted)). In the case at hand, Mr. James did not timely misfile his appeal to this Court; rather, he placed his NOA in his personal mailbox on the last day of the appeal period, left town for the weekend, and ultimately mailed his NOA 4 days late. The Court declines to hold that the alleged extraordinary circumstances here are like those in *Santana-Venegas* and other timely misfiling cases.[1]

Rather, this Court has historically recognized that difficulties encountered in last-minute attempts to timely mail NOAs are not necessarily extraordinary circumstances. *See Leonard v. West*, 12 Vet.App. 554, 555 (1999) (finding "at best[,] a garden variety claim of excusable negligence" where the appellant attempted to mail an NOA on the 120th day, found the post office had closed 5 minutes early, and subsequently mailed the NOA on day 121.). The Court finds that a fallen mailbox flag is not an extraordinary circumstance beyond the appellant's control that warrants equitable tolling, but rather an ordinary hazard of last-minute mailing that could have

---

[1] As to the dissent's discussion of the mailbox rule, *Rios v. Nicholson*, 490 F.3d 928 (Fed. Cir. 2007), makes clear that "the common law mailbox rule . . . only comes into play for purposes of [38 U.S.C. § 7266] when the . . . Court alleges that it never received the [appellant's] NOA." *Id.* at 932. Here, the Court received Mr. James's NOA; therefore the common law mailbox rule is inapplicable and not useful even for illustrative purposes. Further, to the extent that the dissent's analysis potentially implicates the statutory postmark rule enumerated in section 7266, "the postmark rule only comes into play when the NOA is mailed before the deadline but received by the . . . Court after the deadline for filing." *Id.* Here, the Court physically received Mr. James's NOA, but it was postmarked after the 120-day filing deadline; therefore, the statutory postmark rule is also inapplicable.

been avoided but for the appellant's "garden variety neglect."[2]  *See Schreiner v. Derwinski*, 2 Vet.App. 72 (1991) (per curiam) (holding that equitable tolling does not extend to "'a garden variety claim of excusable neglect'" (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990))).  Accordingly, the Court will dismiss Mr. James's appeal.

## III. CONCLUSION

Upon consideration of the foregoing, it is

ORDERED that this appeal is DISMISSED.

DATED: October 30, 2017                                      PER CURIAM.

GREENBERG, *Judge*, dissenting:

I respectfully dissent "as a corrective – in the hope that the Court will mend the error of its ways in a later case."  William J. Brennan, *In Defense of Dissents*, 37 HASTINGS L.J. 427, 430 (1985).  The majority wrongly adopts its own standard of care for mailing an appeal.  It finds that the facts here are akin to "'the typical late-filing cases where the limitations period expires before the would-be claimants *perform any action to preserve their legal rights.*'"  *See ante* at 2 (emphasis added) (quoting *Santana-Venegas v. Principi*, 314 F.3d 1293, 1297 (Fed. Cir. 2002)) (internal quotation marks omitted).  Yet, it is undisputed that the appellant placed his NOA in the mailbox on the 120th day, and thus did everything required of him to ensure timely mailing under 38 U.S.C. § 7266.

The appellant placed his NOA in his mailbox within the 120-day timeframe.  It is irrelevant that there were other methods of mailing available, as his actions would have likely been sufficient to ensure timely mailing but for circumstances beyond his control.  Rather than exercising its authority to consider the overall equities in permitting this appeal to be heard, the Court has instead imposed on veterans seeking to file with this Court requirements over and above those set by Congress in 38 U.S.C. § 7266, or required at common law.  While the common law mailbox rule is not for application here, it illustrates that the appellant's actions were sufficient to effect timely mailing.  *See SSI Med. Servs., Inc. v. Dep't of Human Servs.*, 146 N.J. 614, 621 (1996) (to invoke a presumption that mail was timely received, mailer need only show that "(1) the mailing was correctly addressed; (2) that proper postage was affixed; (3) that the return address was correct; and (4) that the mailing was deposited in a proper mail receptacle or at the post office") (cited in *Kennell v. Gates*, 215 F.3d 825, 829 (8th Cir. 2000)).  These circumstances warrant an application of equity.

The majority relies on decades old caselaw to find that the appellant's method of mailing, while proper, amounted to garden variety negligence.  *See ante* at 2.  The Supreme Court's decision in *Henderson v. Shinseki*, and the repeated admonishments from the Federal Circuit for denying equitable tolling have changed the fundamental approach to the timely filing requirement.  *See*

---

[2] Because we hold that an errantly fallen mailbox flag is not an extraordinary circumstance under *Checo*, the Court need not address, and makes no pronouncement of law regarding, Mr. James's due diligence argument.  *See Checo*, 748 F.3d at 1378 (requiring an appellant demonstrate the elements of (1) extraordinary circumstance; (2) due diligence; and (3) causation in order to qualify for equitable tolling of the statutory appeal period).

3

*Henderson v. Shinseki*, 562 U.S. 428, 441-42 (2011); *see also Sneed v. Shinseki*, 737 F.3d 719, 726 (Fed. Circ. 2013); *Mapu v. Nicholson*, 397 F.3d 1375, 1380 (Fed. Cir. 2005).  The Court must start applying its equitable powers more broadly.  It is for these reasons that I respectfully dissent.